## UNITED STATES v. 1,298.15 ACRES IN BOONE COUNTY et al.

Civ. No. 298.

United States District Court,
W. D. Arkansas, Harrison Division.

Aug. 31, 1951.

Hugh M. Bland, Special Asst. to U. S. Atty., Fort Smith, Ark., for plaintiff.

Willis & Walker, Harrison, Ark., for defendants.

JOHN E. MILLER, District Judge.

On April 16, 1951, a declaration of taking was executed by the Secretary of the Army and filed in this proceeding wherein the land now involved along with other land was designated as Tract No. 0–1449, containing 111 acres. Judgment on the declaration of taking was duly entered and the title in fee simple was vested in the Government in Tract No. 0–1449 as then constituted, subject however to existing easements for public roads and highways.

Subsequent to the filing of that declaration of taking a re-survey was made of the land embraced in Tract No. 0–1449, and it was determined that the acreage therein should be divided into two tracts to be designated as 0–1449 (Rev.), containing 101.-9 acres, and 0–1470, containing 9.1 acres. Accordingly a new declaration of taking was filed and a judgment vesting title in Tract No. 0–1470 was entered.

The division of the original Tract No. 0–1449 was necessary because Jeanette Frances Tucker had become the owner of a portion thereof, now Tract No. 0–1470, by warranty deed dated August 17, 1950, and recorded on the same date. The tract now involved, 0–1470, is 300 feet wide East and West and 1320 feet long North and South and contains 9.1 acres, more or less.

In the answer filed by the present owner of the tract, 0–1470, she alleges, inter alia:

"She would respectfully deny that the Secretary of the Army has the authority to take the North 660 feet of the West 300 feet of the NE¼ of the SE¼ of Sec. 25, Twp. 21 North, Range 19 West, South of White River in Boone County, Arkansas."

The Government filed a motion to strike the above quoted paragraph from the answer and on August 28, 1951, a hearing was held on that motion, and the court now makes and files herein its findings of fact and conclusions of law, separately stated.

Findings of Fact

## 1.

Jeanette Frances Tucker is the owner of the tract of land involved herein. Situated thereon are valuable buildings consisting of a dwelling house, barn and other necessary outbuildings. State Highway 14 runs across the tract near the middle thereof in a Northwesterly and Southeasterly direction. All of the buildings and improvements are located north of the highway. A county highway, unnumbered, leaves State Highway 14 near the Northwest corner of the tract and extends Northward into and serves land belonging to individuals that has not been taken by the Government and which will not be taken.

The land immediately North of the tract and West of the tract has already been acquired by the Government, and the land immediately East and South of the tract has been acquired as Tract No. 0-1449 (Rev.).

State Highway 14 will be relocated when the project has been completed, but it is not known definitely where its new location will be.

The only means of ingress and egress to the tract after State Highway 14 is relocated, if it is removed entirely from the tract, which is indicated because of the location of the contour lines, will be along and upon the county highway running Northward, but in order to reach that highway the landowner would have to go 40 steps across land owned by the Government.

The contour line of 700 feet is 425 feet East from the West line of the tract and 125 feet East of the East line. The dwelling house on the tract, as well as most of the other buildings, is 50 feet higher than the 700 foot contour line.

The testimony did not reveal the distance of the 700 foot contour line West of the West line of the tract, but the map introduced in evidence shows that the 700 foot contour line that runs East of the tract bears Westerly until it comes back immediately North of the East line at a distance of approximately 200 feet North of the North line.

Discussion

At the conclusion of the presentation of the defendant's evidence, the United States Attorney advised the court that the Government desired to stand upon the contention made in its motion to strike, that the court did not have jurisdiction to review the taking of this property. Essentially, the Government's position amounts to a motion to dismiss on the ground that upon the facts and the law the defendant has shown no right to relief.

The power of the Government to condemn private property for public use is conceded by all parties, as, indeed, it must be, but the extent to which the courts may review the exercise of that power is not so clearly defined. This is demonstrated by recent decisions of the Supreme Court. In United States ex rel. Tennessee Valley Authority v. Welch, 327 U.S. 546, 551, 66 S.Ct. 715, 717, 90 L.Ed. 843, the court stated:

"We think that it is the function of Congress to decide what type of taking is for a public use and that the agency authorized to do the taking may do so to the full extent of its statutory authority."

Mr. Justice Reed and Chief Justice Stone, concurring in the result, refused to join in the court's opinion because of certain language of the opinion implying that there was no judicial review of the Authority's determination. Mr. Justice Frankfurter, likewise concurring, pointed out that he did not so read the opinion, and observed "I assume that in citing these cases the Court again recognizes the doctrine that whether a taking is for a public purpose is not a question beyond judicial competence."

Certain language of the court in United States v. Carmack, 329 U.S. 230, 67 S.Ct. 252, 91 L.Ed. 209, would indicate that United States ex rel. Tennessee Valley Authority v. Welch, supra, did not change the law, which prior to that case had generally recognized judicial review, by removing all judicial review. On page 243 of 329 U.S., on page 258 of 67 S.Ct. of the opinion the court stated:

"In this case, it is unnecessary to determine whether or not this selection could have been set aside by the courts

as unauthorized by Congress if the designated officials had acted in bad faith or so 'capriciously and arbitrarily' that their action was without adequate determining principle or was unreasoned. The record presents no such issue * * *."

■ All of the decisions agree that if it is admitted or determined that a condemnation is for a public purpose and within the statutory authority, the courts have no power to review the necessity or expediency of the condemnation of particular property. As expressed in United States v. Carmack, supra, 329 U.S. at page 247, 67 S.Ct. at page 260:

"The comparative desirability and necessity for the site were matters for legislative or administrative determination rather than for a judicial finding."

As the court views the matter there is no question presented in this case which calls for a determination of the extent of judicial review, if any, that may be had of a Congressional determination that a particular use is "public", for it is not and cannot be denied that the use here involved, construction and maintenance of the Bull Shoals Dam and Reservoir, is public. This being so, insofar as the Congress itself is concerned, the extent of the taking, or "the desirability and necessity" for the taking of any particular tract, for the construction and maintenance of the Bull Shoals Dam and Reservoir would appear to be purely legislative and, therefore, not subject to judicial review.

■ It was within the legislative power of Congress to choose the site for the construction of the dam and reservoir, and the only possible inhibition on the power of Congress arises from the Constitution itself, that is, the property taken under the legislation must be for a public use. No doubt the congress could have provided that all portions of tracts, segments, or remnants of tracts within the reservoir area lying above the 700 foot contour line should be excluded, but the congress did not make such a provision. It delegated to the Secretary of the Army the task of carrying out the will of the congress as expressed in the statute hereinafter referred to.

The Bull Shoals Dam and Reservoir Project was authorized by Act of Congress of August 18, 1941, Public Law No. 228, 77th Congress, 55 Stat. 638, which Act, by section 2, 33 U.S.C.A. § 701c note, incorporated section 3 of the Act of June 22, 1936, Public Law No. 738, 74th Congress, 49 Stat. 1571, 33 U.S.C.A. § 701c, as amended by section 2 of the Act of June 28, 1938, Public Law No. 761, 75th Congress, 52 Stat. 1215, 33 U.S.C.A. § 701c–1, the language of which pertinent for present purposes is as follows:

"* * * Notwithstanding any restrictions, limitations, or requirement of prior consent provided by any other Act, the Secretary of War [now Secretary of the Army] is hereby authorized and directed to acquire in the name of the United States title to all lands, easements, and rights-of-way *necessary for any dam and reservoir project* or channel rectification or channel improvement for flood control, * * *."

■ It will be noted that the authority delegated to the Secretary of the Army is "to acquire in the name of the United States title to all lands, easements, and rights-of-way necessary for any dam and reservoir project * * * for flood control". The Secretary of the Army's determination of "necessity" under this grant of authority is subject to judicial review. The administrative determination has great weight, and the court must give due consideration to the action of an administrative agency in selecting a particular tract of land to be taken, but the administrative agency cannot invoke the political power of the Congress to such an extent as to immunize its action against judicial examination in contests between a citizen and the agency.

■■ Under the facts in this record the question before the court is whether the Secretary of the Army's determination of necessity for the taking of this tract was arbitrary and capricious. Before a court can reverse an administrative determination that a taking was necessary there must be a showing on the part of the landowner to the effect that the acquiring agency acted

arbitrarily, capriciously and without an adequate determining principle. The landowner has not sustained this burden in this case and the court cannot say that the action of the Secretary of the Army in selecting this tract of land was without adequate determining principle and reason or that his action was arbitrary and capricious.

Therefore, that part of the answer denying the right of the Government to acquire this tract should be stricken.

Conclusions of Law

1.

The court has jurisdiction of the parties and of the subject matter of this cause.

2.

The taking of Tract No. 0–1470 was for a public use and was within the authority conferred upon the Secretary of the Army by the Congress.

3.

Therefore, the objection raised in the answer of the landowner, Jeanette Frances Tucker, to the taking of Tract No. 0–1470 is without merit, and the motion of the Government to dismiss that particular defense of the landowner should be sustained.

Tract No. 0–1470 will remain upon the trial calendar for a determination of just compensation due the landowner for the taking.

An order in accordance with the above should be entered.